# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| JORGE CONEJO MONTOYA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-00259-RK |
| | ) | |
| CHRISTOPHER CHAMBERLAIN, | ) | |
| PAMELA BONDI, and MARKWAYNE | ) | |
| MULLIN, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Before the Court is Petitioner Jorge Conejo Montoya's verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioner argues that he cannot lawfully be detained without a bond hearing under federal immigration law, constitutional due process principles, and/or the Administrative Procedures Act. Accordingly, he seeks release from detention or a bond hearing conducted by this Court. Respondents filed a response in opposition, and Petitioner filed a reply. (Docs. 4, 5.) The Court then requested that the parties submit supplemental briefing on Petitioner's due process claims. (Doc. 8.) Both parties submitted supplemental briefs. (Docs. 9, 10.) After careful consideration and review, the Court **ORDERS** that the verified petition for writ of habeas corpus is **DENIED**.

## Background

Petitioner Jorge Conejo Montoya is currently being held in custody of the U.S. Department of Homeland Security, Immigration and Customs Enforcement.[1] (Doc. 1 at ¶ 14.) Petitioner entered the United States without authorization in 1998 and has been residing here since then. (*Id.*)

---

[1] As best as the Court can discern, Petitioner is now being held in Kay County, Oklahoma. Petitioner was originally detained in Kansas City, Missouri. Respondents have withdrawn their jurisdictional argument based on Petitioner's relocation to Kay County, Oklahoma. (*See* Doc. 7.) The limited record before the Court indicates that at the time of counsel's filing of this habeas petition, (1) Petitioner was detained in Kansas City, Missouri, or (2) counsel was unaware Petitioner was then in transit from Kansas City to the Kay County, Oklahoma, facility. The Court concludes that it has jurisdiction to consider this habeas action. *See Adriana M.Y.M. v. Easterwood*, No. 26-213 (JWB/JFD), 2026 WL 184721, at *3 (D. Minn. Jan. 24, 2026) ("Because Petitioner properly named Respondents within this Court's territorial jurisdiction based on her last known location at the time of filing, jurisdiction attached at that moment and is not defeated by her transfer.").

Petitioner was previously taken into immigration custody[2] but was released in 2016 on a $5,000 bond. (*Id.*) In April 2024, the Kansas City Immigration Court denied Petitioner's application for cancellation of removal under 8 U.S.C. 1229a(b), which Petitioner appealed to the Board of Immigration Appeals. (*Id.*) That administrative appeal remains pending. (*Id.*)

On March 26, 2026, Petitioner was detained by the Department of Homeland Security. Petitioner alleges that his detention occurred because the Department of Homeland Security sought to encourage the Board of Immigration Appeals to speed up his appeal. Petitioner alleges that he has not violated the terms of his 2016 bond. Petitioner has not received a bond hearing after being taken into custody of federal immigration authorities on March 26, 2026. Accordingly, Petitioner seeks immediate release from detention or a bond hearing before this Court to make an individualized determination whether Petitioner is a flight risk or danger to the community.

Further facts are set forth below as necessary.

**Legal Standard**

The Constitution provides that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. 1, § 9, cl. 2). Habeas corpus protection applies to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Pursuant to 28 U.S.C. § 2241(c)(3), the writ of habeas corpus is extended to persons "in custody in violation of the Constitution or laws or treaties of the United States." Petitioner bears the burden of proving that his detention is unlawful. *See Maye v. Pescor*, 162 F.2d 641, 643 (8th Cir. 1947) (noting that "[t]he burden was on appellant to establish some or all of the charges in his [habeas] petition").

**Discussion**

## I. Statutory Framework for Immigration-Related Detentions

Three statutory provisions of the Immigration and Nationality Act ("INA") primarily govern immigration-related detentions in the pre-final order of removal scenario.[3] The first, 8 U.S.C. § 1225(b)(2)(A), requires mandatory detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not

---

[2] It is unclear based on the record before the Court precisely when Petitioner was originally detained.

[3] A fourth provision, codified at 8 U.S.C. § 1231, governs detention following a final order of removal. This provision is not implicated by the current habeas petition, as there is no final order of removal due to Petitioner's pending administrative appeal before the Board of Immigration Appeals.

2

clearly and beyond a doubt entitled to be admitted." *See Jennings*, 583 U.S. at 297 (noting that § 1225(b)(1) and (2) generally "mandate detention of applicants for admission until certain proceedings have concluded").

The second, 8 U.S.C. § 1226(a), provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," subject to release on bond or conditional parole after a bond hearing. *See Jennings*, 583 U.S. at 306 (recognizing that "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention"); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 527-28 (2021) (outlining the administrative procedure for an alien detained under § 1226(a) to "apply for release on bond or conditional parole," including the initial administrative request followed by subsequent hearings before an immigration judge and ultimately the Board of Immigration Appeals).

The third provision, 8 U.S.C. § 1226(c), directs that certain criminal aliens as to whom § 1226(a) might otherwise apply,[4] "shall [be] take[n] into custody," subject to the discretion of the Attorney General in limited circumstances to release the criminal alien. *Id.* at § 1226(c)(4).

Thus, pursuant to the statutory provisions of the INA,[5] an alien is entitled to a bond hearing and potential release on bond if the alien is being detained pursuant to § 1226(a), but not if the alien is being detained pursuant to § 1225(b)(2) or § 1226(c).

## II.    Habeas Claim Arising Under the Immigration and Nationality Act

In relevant part, Petitioner argues that his detention without a bond hearing violates the INA. Specifically, Petitioner argues that he is entitled to consideration for release on bond under 8 U.S.C. § 1226(a), and that Respondents violated the INA by instead applying the mandatory detention provision, § 1225(b)(2), to Petitioner. This habeas petition was filed on March 26, 2026. One day prior, on March 25, 2026, the Eighth Circuit Court of Appeals decided *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), holding that aliens who are "applicants for admission" as defined in 8 U.S.C. § 1225(a) are also "seeking admission," and are thus subject to mandatory detention

---

[4] That is, aliens who have been convicted of certain criminal offenses or have been charged with or arrested for certain acts that constitute the essential elements for certain enumerated crimes.

[5] The Court's discussion of the constitutional, rather than statutory, implications of these provisions is addressed below.

under § 1225(b)(2). The Court concludes that the Eighth Circuit's decision in *Avila* forecloses Petitioner's habeas claim arising under the INA.

Petitioner does not dispute that he is an "applicant for admission," that is, "an alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a). In *Avila*, the Eighth Circuit stated that for purposes of defining "applicant for admission" pursuant to § 1225(a)(1), "[b]eing 'admitted' does not merely mean being *present* in the United States; under immigration law, it signifies having made a *lawful* entry into the country.'" *Avila*, 170 F.4th at 1133 (emphasis added). Here, Petitioner does not contest the fact that he has not made a lawful entry into the country. Thus, pursuant to *Avila*, he is an applicant for admission subject to the mandatory detention provision of § 1225(b)(2).

In an attempt to circumvent the holding in *Avila*, Petitioner argues that § 1225(b)(2) does not apply "to those who previously were processed by the Respondents under 1226(a) and now due only to a flawed change in interpretation, being again apprehended and now subjected to mandatory detention despite no actual change in law or their circumstances warranting such a change." (Doc. 1 at 16.) In other words, Petitioner argues that because he was previously detained and released on bond under § 1226(a), Respondents cannot now detain him pursuant to § 1225(b)(2). The Court is not persuaded by Petitioner's argument on this point.

To be sure, unlike Petitioner Conejo Montoya, the petitioner in *Avila* had not been previously detained and released on bond pursuant to § 1226(a). However, the Eighth Circuit's decision in *Avila* did not turn on this distinction. The decision instead considered the scope of the phrase "applicant for admission," and thus the scope of aliens who may be mandatorily detained pursuant to § 1225(b)(2). Petitioner Conejo Montoya falls within the scope of the Eighth Circuit's interpretation of "applicant for admission" as established in *Avila*—he is an alien present in the United States without having been lawfully admitted. The Eighth Circuit further explained that "even if previous administrations did not exercise their full authority under § 1225, the '[a]uthority granted by Congress . . . cannot evaporate through lack of administrative exercise.'" *Avila*, 170 F.4th at 1137 (quoting *BankAmerica Corp. v. United States*, 462 U.S. 122, 131 (1983)). Applying the foregoing principle to this case, a previous administration's decision to treat Petitioner under § 1226(a) and release him on bond does not remove the congressional authority, as recognized in *Avila*, permitting mandatory detention of Petitioner under § 1225(b)(2) at this later juncture.

4

Thus, Petitioner cannot show that he is unlawfully detained under § 1225(b)(2) as a matter of law, and the INA does not provide a basis for the habeas relief sought.

## III. Procedural Due Process Habeas Claim

Following *Avila*, habeas petitioners have continued to argue that detention under § 1225(b)(2) without a bond hearing is unconstitutional pursuant to the Due Process Clause of the Fifth Amendment. In *Avila*, the Eighth Circuit addressed only the petitioner's statutory argument under the INA because the district court granted relief on the statutory basis alone. Therefore, unlike Petitioner's claims under the INA, Petitioner's due process claims are not directly foreclosed by *Avila*. *See, e.g.*, *Cervantes Merino v. Whitmore*, No. C26-43-LTS-MAR, 2026 WL 1034395, at *2 (N.D. Iowa Apr. 16, 2026) ("*Avila* does not foreclose a petitioner from raising an as-applied due process challenge.").

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). However, the Supreme Court has also "firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). Petitioner argues that as to his procedural due process claim, the Court should apply the interest-balancing framework established by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and that in weighing the *Mathews* factors the Court should conclude that Petitioner's interest in being free from detention and the risk of erroneous deprivation of that interest outweighs the burden to the Government. The Government contends that Petitioner is not due any additional process beyond the process provided by the INA, and relies on caselaw including *Demore v. Kim*[6] and *Department of Homeland Security v. Thuraissigiam*[7] for the proposition that detention pending removal proceedings is constitutionally permissible.

A number of district courts have adopted Petitioner's proposed analysis relying on the *Mathews* interest-balancing factors to determine whether pre-removal-order detention of an alien without bond under § 1225(b)(2) violates a petitioner's procedural due process rights. *See, e.g.*, *Aliaga Zamora v. Bondi*, No. SA-26-CA-00447-XR, 2026 WL 693054, at *13 (W.D. Tex. Mar. 10, 2026) (applying *Mathews* factors to habeas petitioner's procedural due process challenge to

---

[6] *Demore v. Kim*, 538 U.S. 510 (2003).

[7] *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020).

detention under 1225(b)); *Cuamani Moyotl v. Arnott*, No. 6:26-cv-3172-MDH, at *4-7 (W.D. Mo. Apr. 9, 2026) (slip op.) (same); *Muse v. Mullin*, No. 26-CV-4024-CJW-MAR, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026) (same); *Aureliano M.S. v. Bondi*, No. 26-1974 (JRT/DJF), 2026 WL 992445, at *1-2 (D. Minn. Apr. 13, 2026) (same).

In *Mathews*, the Supreme Court stated that

the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)).

Taking the factors in order, other district courts have recognized that petitioner's "private interest in being free from detention is strong." *Aliaga Zamora*, 2026 WL 693054, at *13 (citing *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.")). As to the second factor, some courts have concluded that "[w]ithout an individualized [bond] hearing, there is substantial risk that noncitizens with a substantial presence in the United States who pose neither flight risk nor danger to the community will be detained." *Id.* Finally, in balancing the foregoing with the Government's interest or burden, these courts have recognized the Government's "weighty interest in removing deportable noncitizens, ensuring compliance with Orders of Supervision, and protecting the public," but have nevertheless concluded that "those interests would be adequately served through individualized bond hearings or other detention proceedings that assess flight risk and dangerousness on a case-by-case basis." *Id.* at 14.[8] Accordingly, district courts that have applied the *Mathews* factors commonly find that the petitioner is entitled to habeas relief. *See, e.g.*, *Cuamani Moyotl*, No. 6:26-cv-3172-MDH, at *6-7; *Muse*, 2026 WL 1008532, at *2; *Aureliano M.S*, 2026 WL 992445, at *2.[9]

---

[8] This particular *Mathews* analysis is drawn from *Aliaga Zamora v. Bondi*. Other courts have applied the *Mathews* factors similarly, even if not identically.

[9] Relief granted in these cases varies, but has included release from custody, or the court ordering a bond hearing before an immigration judge with an individualized finding as to whether the particular alien poses a flight risk or danger to the community. *Compare Aliaga Zamora*, 2026 WL 693054, at *15 (ordering release of petitioner), *with Muse*, 2026 WL 1008532, at *5 (ordering bond hearing "at which the government bears the burden to demonstrate petitioner's dangerousness or flight risk").

6

But whether the *Mathews* interest-balancing approach applies in this context is an important initial question. There are two considerations that persuade the Court against applying the *Mathews* interest-balancing approach to a procedural due process claim arising in the immigration-detention context (and particularly in the pre-final removal order, immigration-detention context).

First, the *Mathews* factors have not generally been applied in the immigration-admission or detention contexts by the Supreme Court. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 523-531 (2003) (considering procedural due process challenge to detention pursuant to § 1226(c) without reference to or application of *Mathews* factors in the due process analysis); *Zadvydas v. Davis*, 533 U.S. 678, 690-702 (2001) (considering procedural due process challenge to § 1231(a)(2), which requires aliens to be held in custody after entry of a final removal order, without reference to or application of *Mathews* factors); *see also Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims."). Nor has the Eighth Circuit adopted *Mathews* to resolve immigration-detention challenges. *See Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) (explicitly rejecting *Mathews* factors analysis in deciding a procedural due process challenge to a year-long detention pursuant to § 1226(c) pending removal proceedings). Thus, while *Mathews* may be instructive in resolving procedural due process claims in many circumstances, the Court is not persuaded that it is a controlling framework in the immigration-detention context. *See Mendez Leiva*, 2026 WL 948430, at *4 (rejecting Mendez Leiva's interest-balancing approach and stating "in resolving other immigration-detention challenges, the Supreme Court has not relied on the *Mathews* framework").

Second, immigration-specific caselaw—discussed more fully below—generally indicates that detention without bond pending removal proceedings is constitutionally permissible. While aliens in the United States possess some due process rights, whether an alien has made a lawful entry into the United States impacts the extent of those rights. "When the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. And, as previously noted, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. "[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland*

7

*Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). In *Thuraissigiam*, the Court found that the petitioner—who had entered the United States unlawfully and then was detained 25 yards from the border—"ha[d] only those [due process] rights regarding admission that Congress had provided by statute." *Id.* at 140. Here, Petitioner has not affected a legal entry to the United States, which impacts the extent of due process rights due pursuant to the principles set forth in *Demore* and *Thuraissigiam*.

For aliens who have entered the United States without legal authorization and are thereafter detained pending removal proceedings, the Supreme Court and Eighth Circuit have recognized that detention is an inherent aspect of the deportation proceedings and have upheld detention without bond hearings while removal proceedings are pending. It is the "longstanding view [of the Supreme Court] that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526; *Banyee*, 115 F.4th at 933 ("The majority [in *Demore*] opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still '*pending*.'") ("Due process imposes no time limit on detention pending deportation[.]"). In *Demore*, the Supreme Court held that mandatory detention of criminal aliens pursuant to § 1226(c) pending removal proceedings did not violate procedural due process. *Demore*, 538 U.S. at 531. The Court broadly concluded that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.*

Here, Petitioner does not deny that he is actively engaged in removal proceedings. He is waiting for a decision on his appeal of an adverse removal decision to the Board of Immigration Appeals. *See Banyee*, 115 F.4th at 933 (noting removal proceedings were ongoing where petitioner had appealed an immigration judge's adverse decision that his conviction was an aggravated felony). Thus, it appears that his detention is constitutionally permissible pursuant to the bright-line rule suggested by *Demore* and *Banyee*. In *Banyee*, the Eighth Circuit addressed a challenge to a year-long detention pursuant to § 1226(c) pending removal proceedings. The Eighth Circuit stated that "we must . . . decide whether the year-long detention violated his rights" and concluded "[t]he answer is no. The rule has been clear for decades: '[d]etention during deportation proceedings . . . [i]s . . . constitutionally valid.'" *Id.* at 931 (quoting *Demore*, 538 U.S. at 523).

Nor does the different statutory provision at issue in *Demore* and *Banyee* (§ 1226(c)) change the analysis here, where Petitioner is being detained pursuant to § 1225(b). *See Mendez Leiva*, 2026 WL 948430, at *4 (concluding that it "makes little difference" that Mendez Leiva

8

"challenges his mandatory detention under § 1225(b), rather than § 1226(c)")"; *Romero v. Brown*, No. 1:26-cv-00007-SMR-SBJ, 2026 WL 1021455, at *5 (S.D. Iowa Apr. 15, 2026) ("Regardless of the statutory provision at issue, *Demore* and *Banyee* stand for the same proposition: mandatory detention pending a determination of removability comports with due process."). Section 1225(b), like § 1226(c), addresses detention in the pre-final removal order context. *See Romero*, 2026 WL 1021455, at *4 ("Although Sections 1225(b) and 1226(c) require detention under different circumstances, the core issue—mandatory detention during removal proceedings—is the same.") (citing *Avila*, 170 F.4th at 1136-37 (discussing overlap between the two provisions)). Moreover, like § 1225(c), § 1225(b) does not "say[] anything whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. Thus, both statutory provisions address detention in the pre-final removal order context, and neither provide for a bond hearing.

The Court is cognizant of the factual differences between the Supreme Court and Eighth Circuit precedent and the instant case—primarily that *Demore* and *Banyee* address claims of criminal aliens detained pursuant to § 1226(c), whereas Petitioner here is detained under § 1225(b)(2). Unlike the petitioners in *Demore* and *Banyee*, it does not appear that Petitioner has any criminal record. However, the Supreme Court has upheld the constitutionality of detention of aliens pending removal even where those aliens do not have criminal records and has done so without requiring an individualized finding of flight risk or danger to the community. For example, in *Carlson v. Landon*, 342 U.S. 524 (1952), the Supreme Court upheld the mandatory detention without bond hearings of aliens who were designated as members of the Communist Party even though "[t]he aliens in *Carlson* had not been found individually dangerous." *Demore*, 538 U.S. at 524-25 (citing *Carlson*, 342 U.S. at 541); *see Carlson*, 342 U.S. at 547-48 (Black, J., dissenting) (noting the majority "holds that law-abiding persons, neither charged with nor convicted of any crime" can be detained without bail if they are members of the Community Party). Similarly, in *Flores*, the Supreme Court upheld over a due process challenge a statute requiring detention of non-criminal minor aliens unless the minor had an available relative or legal guardian available to take custody of the minor upon release. *Flores*, 507 U.S. at 314-15. And in *Demore*, the Supreme Court similarly upheld mandatory detention without bond hearings despite the lack of an individual finding of dangerousness or flight risk as to criminal aliens. *Id.* at 531.

The goals of these statutes are generally the same—effectuating removal by ensuring the alien appears in removal proceedings and ensuring public safety. The Supreme Court has found,

9

in the § 1226(c) context, that mandatory detention necessarily serves the first purpose—ensuring aliens appear in removal proceedings. *See Demore*, 538 U.S. at 527-28 ("In the present case, the statutory provision at issue governs detention of deportable criminal aliens *pending their removal proceedings.* Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."). The same reasoning applies here in the context of § 1225(b)(2)—mandatory detention necessarily serves the purpose of ensuring appearance in removal proceedings. Though individualized bond hearings, including a determination of that particular alien's flight risk, may serve the same purpose, the Court again notes that "the Due Process Clause does not require [the Government] to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528.

Finally, there is no concern here about indefinite detention which does give rise to due process concerns in the immigration-detention context.[10] In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to 8 U.S.C. § 1231(a)(6), which provides authority for the Attorney General to detain a removable alien beyond the 90-day "removal period" following a final order of removal. The Court "read an implicit limitation into the statute" and limited "post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689 ("[Section 1231(a)(6)] does not permit indefinite detention."). Accordingly, the Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized" by the statute; in so holding, the Court noted that to interpret the statute otherwise would place it at odds with the Due Process Clause. *Id.* at 699, 689 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

In *Banyee*, the Eighth Circuit found permissible a year-long detention under § 1226(c) pending removal proceedings, finding that "what matters is that detention pending deportation 'ha[s] a definite termination point'—deporting or releasing the alien—making it 'materially different' from the 'potentially permanent' confinement authorized by other statutes." 115 F.4th at 932 (citing *Demore*, 538 U.S. at 528-29 and *Zadvydas*, 533 U.S. at 697). As with detention

---

[10] Petitioner acknowledges that the timeline of his appeal before the Board of Immigration Appeals has accelerated since being taken into custody, with the parties' briefs having been ordered due on April 27, 2026.

pending removal proceedings pursuant to § 1226(c), detention pending removal proceedings pursuant to § 1225(b) has a termination point—the conclusion of the removal proceedings and subsequent release or removal from the United States. Thus, when removal proceedings are still pending, "deportation is still on the table" and the "detention pending deportation 'ha[s] a definite termination point.'" *Romero*, 2026 WL 1021455, at *5 (quoting *Banyee*, 115 F.4th at 932-33). Therefore, because Petitioner's removal proceedings are ongoing and removal remains "reasonably foreseeable," this case does not raise the same concerns as the potentially indefinite detentions in *Zadvydas*.

Petitioner bears the burden of showing he is entitled to habeas relief. *Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966). In light of the foregoing, the Court concludes that Petitioner's present detention pursuant to § 1225(b) pending the resolution of his appeal to the Board of Immigration Appeals does not violate procedural due process.

## IV. Substantive Due Process Habeas Claim

Petitioner also asserts a substantive due process habeas claim. The Due Process Clause of the Fifth Amendment "promises more than fair process: It also 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Pursuant to principles of substantive due process, "[w]hen a fundamental right is at stake, the Government can act only by narrowly tailored means that serve a compelling state interest." *Id. Glucksberg*'s two-step inquiry guides the substantive due process analysis. "First, it insists on a 'careful description of the asserted fundamental liberty interest.' Second, it stresses that 'the Due Process Clause specially protects only those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 721). Courts have noted that "[t]his is a heavy lift in the immigration context" because "it would be remarkable to put the Government to the most demanding test in constitutional law in the field of immigration, an area unsuited to rigorous judicial oversight." *Mendez Leiva*, 2026 WL 948430, at *5 (quoting *Glucksberg*, 510 U.S. at 911).

Beginning with a careful description of the asserted liberty interest, Petitioner here describes the interest as "the right to be free from arbitrary detention" even while removal proceedings are pending. (Doc. 9 at 2.) However, what Petitioner is actually asserting is a "right of release into this country by an individual who concededly has no legal right to be here."

11

*Zadvydas v. Davis*, 533 U.S. 678, 703 (2001) (Scalia, J., dissenting) (reinterpreting petitioner's claim of "a constitutional right of supervised release into the United States" pending removal and concluding that "[t]here is no such constitutional right" to be released into the country); *Mendez Leiva*, 2026 WL 948430, at *5 (denying habeas petition on substantive due process grounds where petitioner asserted a right of "liberty," which the court construed as asserting a right to be released into the country when petitioner had no legal right to be in the country).[11]

Petitioner makes no argument that his "fundamental right" to be released into the interior of the United States pending a final determination of removability is "deeply rooted in this Nation's history and tradition." *Muñoz*, 602 U.S. at 911 (quoting *Glucksberg*, 521 U.S. at 721). This Court joins those which have concluded that the right Petitioner actually asserts—"release into the country without lawful admission pending removal—is not 'deeply rooted in this Nation's history and tradition.'" *See, e.g.*, *Romero*, 2026 WL 1021455, at *7 (quoting *Mendez Leiva*, 2026 WL 948430, at *5). Thus, Petitioner is not entitled to habeas relief on substantive due process grounds.

## V.     Habeas Claim Arising Under the Administrative Procedure Act

Finally, Petitioner also argues that Respondents have violated the Administrative Procedure Act ("APA") because the "Department of Homeland Security is now holding Mr. Conejo Montoya without bond alleging that he is detained under 8 U.S.C. § 1225(b), based on flawed legal analysis, which is inherently arbitrary and capricious." (Doc. 1 at 17.) The APA, in relevant part, provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[12]

For the reasons explained above, the Court cannot say that denying Petitioner a bond hearing and detaining him under § 1225(b)(2) was the result of flawed legal analysis, and *Avila*

---

[11] Courts need not adopt the liberty interest asserted as described by the petitioner. *See, e.g.*, *Muñoz*, 602 U.S. at 910 (reinterpreting "fundamental right of marriage" as "the right to *reside with her noncitizen spouse in the United States*"). In *Muñoz*, the Supreme Court considered the broader implications of the right asserted. The Supreme Court noted that the right "involves more than marriage and more than spousal cohabitation—it includes the right to have her noncitizen husband enter (and remain in) the United States." *Id.* Here, as in *Muñoz*, the right asserted (right to be free from arbitrary detention) has further implications—it also includes the right to be released into the interior of the United States for someone who entered and has been residing in the country without having sought legal authorization to do so.

[12] While the APA provides other scenarios under which a reviewing court should hold agency action unlawful, *see* § 706(2)(B)-(F), Petitioner relies only on § 706(2)(A), and the Court analyzes only that provision herein.

provides legal legitimacy under the INA for Petitioner's detention.  Moreover, while Petitioner "believe[s] he is being held pursuant to *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025),"[13] (Doc. 1 at 8), Petitioner has not persuaded the Court that Respondents' and/or an immigration judge's "decision to follow a precedential opinion by the Board of Immigration Appeals . . . qualifies as 'arbitrary, capricious, [or] an abuse of discretion,'" *Mendez Leiva*, 2026 WL 948430, at \*6 (concluding no APA violation for detention without bond hearing under § 1225(b)).  Thus, Petitioner has not shown that he is entitled to habeas relief based on a violation of the APA.

## Conclusion

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that the petition for writ of habeas corpus, (Doc. 1), is **DENIED**.

**IT IS SO ORDERED.**

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  June 4, 2026

---

[13] In *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals held that immigration judges lack authority to hear bond requests or to grant bonds to aliens who are present in the United States without admission and being detained pursuant to 8 U.S.C. § 1225(b)(2)(A).

13